Feb. 1841.

Luce
v
Hinds and
others.

---

### Luce *vs.* Hinds and others.

A defence of usury must be distinctly set up in the plea or answer of the defendant, and the terms of the usurious contract and quantum of usurious interest or premium must be specified and distinctly set out.

In a suit by an assignee of a bond and mortgage for the foreclosure thereof, against the mortgagor and the mortgagee who has assigned to the complainant with guaranty, the decree will be, first for the sale of the mortgaged premises, second, for an execution against the obligor for the deficiency, third, for an execution against the guarantor for any deficiency after the return of the execution against the obligor.

This is a bill to foreclose a mortgage executed by James H. Hinds to Philip Wilbur, assigned by Wilbur to George Stow, and by George Stow to the complainant with a guaranty, on the part of Stow, of the collection of the mortgage. The complainant asks in his bill to charge Stow personally upon his guaranty for any deficiency which may

Feb. 1841.

Luce
v.
Hinds and
others.

remain after the sale of the mortgaged premises, and execution against the obligor. Stow is the only defendant who answers, and it appears that he was endorser upon a note of John B. Wilbur for $3,058 92, which was past due, and Stow had been fixed as endorser; which note was held and owned by one Talcott. It appears also that the complainant held a note against the same Talcott for the same amount, upon which a suit had been commenced— that Stow purchased of the complainant the note he held against Talcott, and paid the complainant for said note, by an assignment of this mortgage for $2,700—an assignment of a mortgage against Dwight Danforth for $555, a transfer of a note against James H. Hinds for $684 08, and a note against James McKnight for $107; which notes were endorsed by Stow upon their transfer, and which mortgages were guarantied. Stow, after he obtained the note in this way, used it as a set off, and to take up the note held by Talcott and endorsed by Stow. The purchase was made for this object, and by mutual understanding with all the parties previous thereto. Stow insists, in his answer, that the contract so made between him and the complainant was usurious, in giving forbearance of payment at a greater rate of interest than 7 per cent. and that for such reason he is not legally liable upon his guaranty. The answer, however, does not state the time when the notes, transferred to the complainant, became due, nor whether they were upon interest, nor the time when the Danforth mortgage became due, nor the rate of interest, nor the time when this mortgage became due.

The cause comes to a hearing upon pleadings and proofs.

*O. H. Marshall,* for complainant.

*H. Shumway,* for defendant Stow.

THE VICE CHANCELLOR. The nature of the transaction between these parties is not difficult to be comprehended or understood. Stow, the defendant who litigates this suit, was fixed as endorser upon a note held by Talcott. The complainant held a note of the same amount against Talcott, with which Stow had no connexion; but if Stow could procure this note of the complainant it would enable him to pay Talcott the note which he held against Stow as endorser, and Talcott was willing thus to liquidate his own debt and give up the note which he held. Stow had not the money to meet his endorsement held by Talcott, but if he could procure the note held by the complainant, it would be as valuable as so much money to him. He made the negotiation for such purpose, and purchased this note of the complainant by the transfer of this mortgage and other securities for a larger amount, and not then due, with a guaranty of the collection.

In substance and in effect the whole transaction between Stow and the complainant, as presented by the answer, amounts to this : that Stow sold to the complainant, with guaranty, certain choses in action to the amount of $4,000 for $3,000 in cash. The question then presented would be, is Stow liable upon this guaranty to the complainant, or is the guaranty void for usury. The defendant, it is to be observed, does not attempt to impeach the assignment, so far as it affects the transfer of the paper, but only to impeach his own covenant, so far as his personal liability thereon is concerned.

Feb. 1841.

Luce
v.
Hinds and
others.

This was the question that upon the argument of the cause, I supposed was the question presented, and the question that I supposed the court was bound to decide. But upon perusing the papers I find other technical points presented which deserve and should receive consideration. The defence set up is usury. Usury in the guaranty which should avoid it as a personal covenant against the defendant Stow. In looking over the answer I perceive that the amount paid for the note is not stated in a manner to inform the court how much was paid. I learn, it is true, that this mortgage, and the mortgage of Danforth, and the note of Hinds, and the note of McKnight were transferred for the purchase of this note. I understand the amount of these several choses in action, but I do not understand from the pleadings when they were due, or whether they were upon interest or not, or if upon interest, at what rate of interest. I therefore cannot say, now, what the defendant Stow paid for these notes. In a plea or answer, relying upon usury, the pleading should be specific. The Chancellor says, in Vroom vs. Ditmas, 4 Paige, 533, that the defence of usury must be distinctly set up in the plea or answer of the defendant, and the terms of the usurious contract, and the quantum of usurious interest or premium must be specified and distinctly and correctly set out. Comyn on usury, 203; Tate vs. Willings, 3 Dumford & East, 538. Certainly this is not done in this case, and therefore this case does not properly raise the question which I supposed it did upon the argument. I shall be, therefore, compelled to decree against the defendant, according to the prayer of the complainant's bill. The order must be, a reference to a mas-

Feb. 1841.

ter to compute the amount due—the final order will be for the sale of the mortgaged premises, and a personal decree against the obligor, Hinds, for the deficiency, and in case an execution against Hinds does not realize the money, an execution must afterwards go against Stow for any balance due after sale of the premises, and execution unsatisfied against the obligor, Hinds.